Will A. Peairs et al., Appellees, v. City of Des Moines et al., Appellants.

MUNICIPAL CORPORATIONS: Fiscal Management—Anticipating
1    Revenues. Cities of the first and second class may not legally issue certificates of indebtedness or other similar forms of indebtedness in anticipation of and payable out of the revenues *of the succeeding year.* (Sec. 668, Par. 16, Code Supp., 1913.)

MUNICIPAL CORPORATIONS: Ordinances—Enactment Without Pub-
2    lic Inspection. The statutory requirement (Sec. 1056-a30, Code Supp., 1913) that certain enumerated ordinances and resolutions shall remain on file in the office of the city clerk for one week, for public inspection, complete in the form in which they may be finally passed, is mandatory, and therefore an ordinance passed in disregard of said provision is illegal.

MUNICIPAL CORPORATIONS: Fiscal Management—Appropriation
3    Under Budget System. A city which levies a consolidated tax under the grant of power contained in Ch. 112, 38 G. A., may not legally appropriate any part of the resulting revenues to the board of trustees of a municipally owned waterworks plant in payment for water furnished to the city, the city not being an "individual" nor a "company," within the meaning of Sec. 894, Par. 7, Code Suppl. Supp., 1915.

APPEAL AND ERROR: Review—Scope and Extent in General—Hypo-
4    thetical Case in re Debt Limitation. The appellate court will not pass upon the question whether the city has exceeded its constitu-

tional and statutory limit of indebtedness on a record which presents nothing more than a hypothetical case.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

DECEMBER 15, 1922.

REHEARING DENIED DECEMBER 14, 1923.

ACTION in equity by citizens and taxpayers of the city of Des Moines, to restrain certain acts and procedure of the city council of said city upon various grounds, including the claim that the council is threatening to create indebtedness and sell bonds in excess of the limitations placed thereon by the statute and the Constitution. The decree of the court below sustained in part the contention of both parties, and both have appealed. The defendants first gave notice of appeal, and they will be denominated the appellants.—*Affirmed.*

*John J. Halloran, Reson S. Jones, C. A. Weaver,* and *Paul Hewitt,* for appellants.

*H. H. Sawyer,* for appellees.

*H. W. Byers, Amicus Curiæ.*

STEVENS, C. J.—This is an action to restrain the city council and other officers of the appellant city, which is under the commission form of government, from issuing certificates of indebtedness in anticipation of the revenues of said city to be collected the following year and payable therefrom; from consummating certain contracts entered into with various individuals for the procurement of sites for park, art, and memorial purposes and for children's playgrounds, from proceeding further to levy taxes or issue and sell bonds necessary for carrying out said projects, and from including in the consolidated levy the tax authorized by Chapter 112, Acts of the Thirty-eighth General Assembly, and covered by Paragraph 7 of Section 894, Supplemental Supplement, 1915; and to further enjoin the said city and its officers from incurring indebtedness in excess of its

statutory and constitutional limitations. The court below found in favor of appellees on all of the above propositions, except the last. Upon this proposition, the court found in favor of appellants.

I. Commencing in 1918, the officers of appellant city began, and have since continued, to issue certificates of indebtedness for various forms of obligations of the city, when the funds

1. MUNICIPAL CORPORATIONS: fiscal management: anticipating revenues.

appropriated for that year became exhausted, and to pay the said certificates of indebtedness out of the revenues collected from the levy for the succeeding year. Another method pursued by appellants, which is complained of, is the issuance of certificates of indebtedness in large amounts, upon which money is borrowed from a bank, and "pay checks" issued to employees of the city, instead of warrants, which pay checks are paid by the city treasurer out of the funds borrowed from the bank. It is not necessary to specify the various purposes for which certificates of indebtedness and pay checks were issued. The proposition for our decision goes to the right of the city to issue certificates of indebtedness in anticipation of, and payable out of, the revenues collected from the levy of the succeeding year. Subdivision 16, Section 668, of the Code Supplement, 1913, is as follows:

"16. In cities of the first and second class, the council shall make the appropriation for all the different expenditures of the city government for each fiscal year at or before the beginning thereof, and it shall be unlawful for it or any officer, agent or employee of the city to issue any warrant, enter into any contract, or appropriate any money, in excess of the amount thus appropriated, for the different expenses of the city, during the year for which said appropriation shall be made. Any such city shall not appropriate, in the aggregate, an amount in excess of its annual legally authorized revenue; but nothing herein shall prevent such cities from anticipating their revenues for the year for which such appropriation is made, or from bonding or refunding their outstanding indebtedness. * * *"

Section 898 of the Code of 1897, relating to loans which the city council may negotiate in anticipation of its revenues for the fiscal year, is as follows:

"Loans may be negotiated or warrants issued by any municipal corporation in anticipation of its revenues for the fiscal year in which such loans are negotiated or warrants issued, but the aggregate amount of such loans and warrants shall not exceed the estimated revenue of such corporations for the fund or purpose for which the taxes are to be collected for such fiscal year."

The provisions of the foregoing statutes are apparently clear, and would seem to be conclusive as to the right and authority of cities to incur indebtedness and issue certificates or other similar forms of indebtedness in anticipation of, and payable out of, the revenues of the succeeding year. The language of Paragraph 16 of Section 668 of the Code Supplement makes it incumbent upon the city council of cities of the first and second class to make appropriations for all of the different expenditures of the city for each fiscal year at or before the commencement of such year, and specifically makes it "unlawful for it or any officer, agent or employee of the city to issue any warrant, enter into any contract, or appropriate any money, in excess of the amount thus appropriated, for the different expenses of the city, during the year for which said appropriation shall be made." If the above concluded the section, it might possibly not be broad enough to cover the exact point in controversy. The remainder of the statute limits the right of the city to anticipate the collection of its revenues, to the year for which the appropriation is made, but does not prohibit the bonding or refunding of outstanding indebtedness. When the two parts of the section are construed together, the authority conferred upon the city council is to anticipate the revenues to be collected for the fiscal year in which the appropriations for that year have been made, and it is made unlawful for any officer, agent, or employee of the city to issue any warrant, enter into any contract, or appropriate any money in excess of those appropriated for the expenses of the city during the year for which said appropriation shall have been made. Stronger language could not well be used. The provisions of Section 898 of the Code of 1897 quoted supra prohibit the issuance of warrants in excess of the aggregate amount of the estimated revenues of the city for the fund or purpose for which the taxes are to be col-

lected for the fiscal year. This section also prohibits the making of loans in excess thereof. The certificates of indebtedness issued to various parties and deposited in banks as security for loans made to the city, and the issuance of pay checks on the bank, payable out of the proceeds of such loans, all come within the clear inhibitions of the above statutes. On behalf of appellants, it is urged upon us that Section 1056-a19 of the Code Supplement, 1913, which adopts all laws governing cities of the first and second class not inconsistent with the provisions of the commission plan act, and makes the same applicable thereto, was not intended to interfere with such cities and to prevent them from carrying out the provisions of Section 1056-a27 of the Supplement, which confers power upon the council to create and fill offices and employments other than therein prescribed, according to their judgment of the needs of the city, and also authorizes them to prescribe, limit, or change the compensation of officers or employees; and that it is inconsistent therewith. Section 1056-a27 does not purport to increase or extend the power of cities having a commission form of government, in dealing with the revenues thereof, and while it is doubtless true that the officers of a growing city may often find themselves hampered by the insufficiency of its available revenues, this cannot operate to extend their power.

It is further urged on behalf of appellants that, notwithstanding the provisions of Chapter 112, Acts of the Thirty-eighth General Assembly, appellant city may anticipate the collection of taxes authorized to be levied for the grading fund, city improvement fund, and city sewer fund, as authorized by Section 912 of the Code. Whether the above contention is correct or not, we do not decide. We find no reference in the arguments of counsel to any place in the record where the issuance of any certificates or bonds bearing interest coupons authorized by Section 912 is threatened or involved in this controversy, and therefore the decree below, in so far as it relates to said Section 912, is set aside. What we hold upon this point is that certificates of indebtedness may not be issued in anticipation of revenues to be collected the succeeding year, but we see no reason why any surplus left at the close of the fiscal year in a particular fund upon which certificates of indebtedness may pre-

viously have been drawn, may not be applied to the payment thereof. The decree entered below as to certificates of indebtedness is affirmed.

II. Chapter 168, Acts of the Thirty-eighth General Assembly, provides:

"All cities including cities under special charter and commission plan of government, having a population of eighty-five thousand (85,000) or over, shall have the power to certify to the county auditor and to cause to be collected in addition to all taxes now authorized for park purposes an annual tax of not to exceed one-half mill on the dollar on all taxable property of the city, to be used for the sole and only purpose of purchasing and paying for real estate to be used for park, art and memorial purposes."

2. MUNICIPAL CORPORATIONS: ordinances: enactment without public inspection.

Such cities are further empowered thereby to "anticipate the collection of said additional tax authorized to be levied for the purchase of real estate for park, art and memorial purposes, and for that purpose may issue park certificates or bonds with interest coupons, and the provisions of Chapter 12, Title V of the Code, and Chapter 7 of the Acts of the Thirty-seventh General Assembly shall be operative as to such certificates, bonds and coupons in so far as they may be applicable. The proceeds of such tax shall be kept as a separate fund and shall be issued for the sole and only purpose of paying certificates or bonds and coupons issued thereupon, and for no other purpose whatsoever."

Section 879-r of the Supplemental Supplement, 1915, provides:

"All cities shall hereafter have the power to provide one or more playgrounds, as hereinafter provided, the number and location thereof to be determined by the city council; provided, however, the electors of such city, at a general or special election called for that purpose, shall first vote in favor of the establishment of such playgrounds and the issuing of city bonds for the providing thereof."

Section 879-s of the Supplemental Supplement empowers cities to provide for an issue of bonds to be known as "Playground Bonds," for the purpose of providing funds for the pur-

chase of real estate to be used for children's playgrounds. A proposition to provide for playgrounds was submitted to and approved by the electors of the city of Des Moines, March 29, 1920.

It appears to be conceded by appellants that Section 1056-a30 of the Code Supplement, 1913, which requires "every ordinance or resolution appropriating money or ordering any street improvement or sewer, or making or authorizing the making of any contract, or granting any franchise or right to occupy or use the streets, highways, bridges or public places in the city for any purpose, shall be complete in the form in which it is finally passed, and remain on file with the city clerk for public inspection at least one week before the final passage or adoption thereof," is applicable to resolutions and ordinances passed and enacted for the purpose of carrying out the provisions of Chapter 168 and Section 879-r *et seq.* Necessary resolutions and ordinances authorizing the certifying of a tax and the sale of bonds for the purpose of securing sites for park, art, and memorial purposes and for children's playgrounds were passed by the city council, and proposed contracts with various parties for the purchase of property therefor were authorized. Contracts were accordingly entered into with different parties, which provided that payment of the consideration should be made out of the proceeds derived from the sale of bonds issued for that purpose. No taxes have, in fact, been certified to the county auditor, or bonds issued or offered for sale, for the purpose of carrying out either of these projects. The city council, however, caused a wading pool to be placed on the property purchased for playgrounds, at an expense of $1,700 or $1,800, which was paid for out of the natatorium fund.

The provisions of Section 1056-a30, requiring ordinances or resolutions referred to therein to remain on file, complete in the form in which they may be finally passed, in the office of the city clerk for one week for public inspection, before the final passage or adoption thereof, were not complied with; but, on the contrary, all of the resolutions and ordinances referring to either of said projects were passed by the city council upon the same day. Appellees in their petition prayed that the appellants be restrained from proceeding further in carrying out the contracts entered into with the various parties for the purchase of

sites for the above projects, and from taking any further steps in relation thereto in pursuance of the resolutions and ordinances adopted as above. The court below granted the prayer of the petition, and enjoined appellants from proceeding further under resolutions and ordinances illegally adopted, but did not undertake to fix the status or to adjudicate the legality of the contracts entered into.

The requirements of Section 1056-a30, with reference to the passing of certain ordinances and resolutions appropriating money or authorizing the making of contracts, are too clearly mandatory to call for discussion. The failure to comply therewith in the particulars stated above, is fatal to the resolutions and ordinances in question. In so far, therefore, as the decree of the court below restrains appellants from proceeding further thereunder, it is correct. None of the parties to the several contracts for the sale and purchase of property to be used in carrying out the above projects, are parties to the record. We shall not, therefore, undertake to declare the status of these contracts, or to pass upon or adjudicate any question that might arise in a controversy between the parties thereto and the city, except as herein stated, or to anticipate further illegal action on the part of appellants. None of these contracts are *ultra vires*, in the sense that the city council is prohibited, in any event, from entering into contracts for the purposes designated; and there is no claim of fraud or bad faith on the part of appellants, nor is there anything in the record suggesting that, so far as the consideration agreed upon or the terms expressed therein are concerned, they are not advantageous to the city.

III. Chapter 112, Acts of the Thirty-eighth General Assembly, entitled "An act conferring upon cities and towns the authority to adopt a budget system," authorizes cities and towns to levy one tax "in lieu of any or all of the separate annual levies provided in Sections eight hundred eighty-seven (887) of the Code, and Subdivisions one (1), two (2), three (3), seven (7) and eight (8) of Section eight hundred ninety-four (894) of the 1915 Supplemental Supplement to the Code, * * * which shall not in the aggregate exceed the total amount of taxes which such city or town might have levied under the sections

3. MUNICIPAL CORPORATIONS: fiscal management: appropriation under budget system.

and chapters which are consolidated into such single tax levy.''

The maximum aggregate levy that may be made under the provisions of this act is 35 mills. The appellant city has adopted the budget system, and for the year preceding the commencement of this action levied a consolidated tax of 35 mills. The only question raised as to this levy is that provided for by Subdivision seven (7) of Section 894, Supplemental Supplement, 1915, which is as follows:

''A tax not exceeding, in any one year, five mills on the dollar, for the purpose of paying the amount due or to become due to any individual or company operating waterworks for water supplied under any contract, the levy to be limited to the property as in Subdivision 5 hereof; and if in cities of the first class the maximum tax is insufficient to pay such amount under contracts now in force, the deficiency shall be paid out of the general fund; * * *''

Section 1 of Chapter 112 further provides that:

''The city or town making such consolidated levy shall prior to the first day of April thereafter. appropriate the estimated revenue to be received from such consolidated levy in such ratio as the council may determine, said appropriation to be for no purpose not provided for in the sections and chapters so consolidated.''

The city of Des Moines acquired, owns, and operates a system of waterworks under the provisions of Chapter 288, Acts of the Thirty-eighth General Assembly. The waterworks are managed and controlled by a board of trustees, the duties and powers of which are fully prescribed and defined by the act. The city council in 1921 appropriated $80,000 out of the revenues to be raised by the consolidated levy authorized by Chapter 112, for the purpose of paying the city for water service received from its municipally owned plant. The question that must be answered in this connection is: Does Chapter 168, Acts of the Thirty-eighth General Assembly, authorize cities that have adopted the budget system to levy a single tax of 35 mills, to be appropriated and used without reference to the purposes mentioned in Section 894, Supplemental Supplement, or does it simply authorize such cities to levy one tax in lieu of the several taxes authorized by Section 887 of the Code and Paragraphs 1,

2, 3, 7, and 8 of Section 894 which, in the aggregate, shall not exceed 35 mills, and which must be used only for the purposes designated therein. The five-mill tax which cities and towns are authorized by Paragraph 7 of Section 894 to levy, is for the purpose of providing revenue with which to pay any *"individual or company"* operating waterworks, for water supplied under contract therewith to such city. Chapter 112, as shown by the portion quoted supra, specifically prohibits the appropriation of any portion of the revenue derived from the 35-mill levy to any other purpose than that assigned by the section and paragraphs mentioned. It seems quite clear, therefore, that, while cities that have adopted the budget system may levy a consolidated tax which shall not exceed 35 mills and the revenue derived therefrom may be appropriated or used for any or all of the purposes designated in the sections and paragraphs referred to in Chapter 112 for which a levy may legally be made, its use must be confined strictly thereto. No portion of the consolidated tax, for instance, need be used for the payment of water rents to any individual or company operating waterworks, but no part thereof shall be used for the payment of water rents to any person or concern except an *individual or company* operating such waterworks. Can the court construe Paragraph 7 of Section 894 so as to hold that the city of Des Moines is either an "individual" or "company," within the meaning thereof, or under the provisions of Chapter 288, Acts of the Thirty-eighth General Assembly?

It is suggested by appellants that the city does not, in fact, own its waterworks; that they are held in trust only, for the use and benefit of its citizens; and that the full management, control, and dominion thereover are confided to a board of trustees, whose power in the management thereof is absolute. Section 7 of Chapter 288 authorizes the election and appointment of a board of waterworks trustees, on the nomination of the mayor, only when the city has become the owner of a system of waterworks. The question involved at this point is manifestly one of grave importance to appellant city, and we have given it most careful and thorough consideration. We are unable, however, to avoid the conclusion that the tax authorized by Paragraph 7 may be included in the consolidated levy only when some por-

tion thereof is required for the payment of water rentals to an individual or company operating waterworks, and that to sustain the levy of a tax for the purpose of paying the board of waterworks trustees for water supplied thereby for the use of such city would be to sanction the use thereof for a purpose not only not authorized by the section or paragraph of the Code referred to in Section 1 of Chapter 112, Acts of the Thirty-eighth General Assembly, but specifically forbidden thereby. The language of Paragraph 7 is not of doubtful meaning, and its meaning cannot possibly be extended to include waterworks owned by the municipality. The appropriation of any part of the revenues derived from the levy of a consolidated tax to the payment of water rentals to, or for service furnished by, the city would be to use it for a purpose ''not provided for in the sections and chapters so consolidated;'' and it is, therefore, illegal. The court must construe the statute as it finds it, and this must be done without reference to the question of the authority of the legislature to have made some other additional or different provision.

It is our conclusion that the decree entered below, enjoining the levy by the appellant city of a tax under Paragraph 7, must be affirmed.

IV. Appellees further allege in their petition that the appellant city has contracted indebtedness in excess of the amount allowed by statute and permitted by the Constitution, and that it is threatening to issue bonds for the

4. APPEAL AND
ERROR: review:
scope and ex-
tent in general:
hypothetical
case *in re* debt
limitation.

purpose of taking up a portion of its outstanding obligations. The court below, in a written opinion filed in the case, reached the conclusion that the city was well within both its statutory and constitutional limitations. We find nothing in the record to indicate that the appellants are threatening or contemplate the issuance and sale of funding or other bonds. We shall not, in this situation of the record, anticipate what action the city council may see fit to take in the future, and, based thereon, proceed to the discussion of a purely academic question.

No further steps can be taken under existing ordinances in the matter of issuing and selling bonds for park, art, memorial, or playground projects, nor shall we discuss the question upon the basis of assumed facts, or for the purpose of answering

a hypothetical inquiry. In the absence of some further threatened determined action of the city council, we have no occasion to pass upon the question as to whether or not the city has exceeded the proper limit of its power to contract indebtedness. What the city has already done in that respect is not a subject for injunctive relief. As stated, the court below found in favor of appellants upon this point, but in doing so made a special finding as to the items and forms of indebtedness which may be considered in passing upon the statutory and constitutional limitations discussed. These findings are not to be regarded as in any sense an adjudication for or against any of the parties to this action.

We see no reason for further extending this opinion. We have read the briefs and arguments of counsel with care, and have not, in consultation, overlooked any point, and the failure to refer to all of them in the opinion is not due to oversight or inadvertence.

The judgment and decree of the court below is—*Affirmed.*

All the justices concur.